865 F.2d 259
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
Samuel FRANKEL, Jean Frankel, Stuart R. Frankel, Stanley D.
Frankel, Bruce H. Frankel, and Joelyn Frankel
Nyman, a Co-Partnership, a/k/a Yarmouth
Enterprises d/b/a Somerset
Inn, Respondents.
 No. 88-6262.
 United States Court of Appeals, Sixth Circuit.
 Dec. 22, 1988.
 ORDER
 
 1
 Before BOYCE F. MARTIN, Jr. and NATHANIEL R. JONES, Circuit Judges, and JOHN FEIKENS, Senior District Judge.*
 
 
 2
 This cause was submitted upon the application of the National Labor Relations Board for summary entry of a judgment against Respondents, Samuel Frankel, Jean Frankel, Stuart R. Frankel, Stanley D. Frankel, Bruce H. Frankel, and Joelyn Frankel Nyman, a co-partnership, a/k/a Yarmouth Enterprises d/b/a Somerset Inn, their officers, agents, successors, and assigns, enforcing its order dated August 18, 1988, in Case Nos. 7-CA-24522, 7-CA-24523, 7-CA-24528, 7-CA-24613, 7-CA-24614, 7-CA-24717, 7-CA-24977, and 7-CA-25733(2), and the Court having considered the same, it is hereby
 
 
 3
 ORDERED AND ADJUDGED by the Court that the Respondents, Samuel Frankel, Jean Frankel, Stuart R. Frankel, Stanley D. Frankel, Bruce H. Frankel, and Joelyn Frankel Nyman, a co-partnership, a/k/a Yarmouth Enterprises d/b/a Somerset Inn, their officers, agents, successors, and assigns, shall:
 
 1. Cease and desist from:
 
 4
 (a) Telling employees that pursuit of employees' remedies under the National Labor Relations Act (hereinafter called the Act) would be futile.
 
 
 5
 (b) Telling employees that they will be terminated because of their union activity.
 
 
 6
 (c) Threatening employees, because of their union activity, with discharge and prosecution.
 
 
 7
 (d) Photographing employees while they are engaged in striking or picketing protected by Section 7 of the Act.
 
 
 8
 (e) Threatening employees with arrest for picketing or striking protected by Section 7 of the Act.
 
 
 9
 (f) Telling union stewards and other employees that Respondents will not discuss union business with them.
 
 
 10
 (g) Telling non-employees, under circumstances where Respondents reasonably know that such non-employees would relay this message to an employee or employees, that Respondents would prosecute employees for fraud if they ran for shop steward.
 
 
 11
 (h) Telling employees that Respondents have enough evidence to take fellow employees to court because they were not supposed to be writing grievances.
 
 
 12
 (i) Interrogating employees, in a manner constituting interference, restraint, or coercion, about employees' action in writing employee grievances, or about union stewards' action in reporting seeming employee health hazards to government agencies.
 
 
 13
 (j) Telling employees that orientation training required of certain employees had not been given to others because they were not union members.
 
 
 14
 (k) Telling employees after the end of a strike protected by Section 7 of the Act that employees who were hired into bargaining-unit jobs during the strike are not covered by an implemented contract proposal to Local No. 24, Hotel Employees and Restaurant Employees International Union, AFL-CIO (hereinafter called Local 24).
 
 
 15
 (l) Discouraging membership in Local 24 or any other labor organization by discharging employees; suspending employees; changing employees' seniority date; changing the system for assigning work or work stations; changing employees' vacation pay; disciplining employees; subjecting employees' work to very close scrutiny; summoning them for questioning about their unemployment compensation claims; keeping track of employees' breaks and lunches; deciding after the end of a strike protected by Section 7 of the Act to pay, and then paying, cash bonuses to employees because they worked during the strike; requiring former participants in such a strike to attend orientation sessions as a precondition for placement on the work schedules; failing or refusing to reinstate, or delaying the reinstatement of, participants in such a strike; according to employees who worked during such a strike preferential seniority rights, affecting working assignments, with respect to participants in such a strike; physically accompanying employees during working hours; delaying employees' reinstatement; removing employee telephones from Respondents' premises; diminishing employees' earning opportunities by increasing the employee complement; imposing new and more onerous work rules; or otherwise discriminating with regard to hire or tenure of employment or any term or condition of employment.
 
 
 16
 (m) Suspending employees, physically accompanying employees during working hours, delaying employees' reinstatement, discharging employees, or otherwise discriminating against employees because they have filed charges or given testimony under the Act.
 
 
 17
 (n) As to employees in the appropriate unit, changing rates of pay, wages, hours of employment, or other conditions of employment, without previously giving Local 24 notice of and an opportunity to bargain about such changes. This unit consists of all Banquet Housepersons/Banquets, Banquet Servers, Bar Porters, Bartenders/Banquets, Bartenders/Public, Bartenders/Service, Cashiers and Order Takers, Coatroom Attendants, Cocktail Servers, Door and Guest Service Attendants, Dryers, Food Servers, Food Service Attendants, Front Office, Room Clerks, Housekeeping Attendants, Housepersons, Lead Housekeepers, Line Cooks, Night Auditors, Pantry Persons, Pool Attendants, Prep Cooks, Pressers, Receiving Clerks, Reservations Clerks, Room Service Servers, Serving Room Attendants, Tailors, Telephone Operators, Utility Persons, Valet Parking Employees and Washers employed by Respondents at their Troy, Michigan, place of business; but excluding office clerical employees, managerial employees, guards and supervisors as defined in the Act.
 
 
 18
 (o) Failing or refusing to give Local 24, on its request, relevant information needed for the proper performance of Local 24's duties as the bargaining representative of the employees in the appropriate unit.
 
 
 19
 (p) In any other manner interfering with, restraining, or coercing employees in the exercise of their rights under the Act.
 
 
 20
 2. Take the following affirmative action designed to effectuate the policies of the Act.
 
 
 21
 (a) Offer Carol Bronson reinstatement to her former job or, if that job no longer exists, to a substantially similar job, with the seniority she enjoyed before 22 February 1985, and without prejudice to any other rights and privileges previously enjoyed.
 
 
 22
 (b) Offer Kathy Johnson and Doris Littleton jobs as regular maids with the seniority date as such of 17 June 1985.
 
 
 23
 (c) Afford Vickie Hardy the seniority date of 17 June 1985 as a regular maid.
 
 
 24
 (d) Restore to the banquet servers the seniority which they enjoyed as of 21 February 1985.
 
 
 25
 (e) Return to the system used as of 21 February 1985 for assigning work to banquet servers.
 
 
 26
 (f) Expunge from Respondents' files any reference to the discipline issued to Sabrina Byrd on 15 April 1985, 10 May 1985, 27 June 1985, 9 July 1985, and 19 July 1985; to the discipline issued to George Kryzs on 17 June 1985; to Carol Bronson's July 1985 resignation; to the warning notices issued to Donald Davison dated 9, 10, 11, 12, and 13 February 1985; to his alleged termination in February 1985; and to any disciplines issued to any employee for any violations occurring as the result of any rules changes found unlawful herein. Remove from the written records maintained by supervisor Donald Davison any and all references to Byrd and the number of loads washed by machines which she operated. Notify such employees in writing that this has been done and that evidence of such action will not be used as a basis for future personnel action against them.
 
 
 27
 (g) Upon request by Local 24,
 
 
 28
 (1) Install, in front of the freight elevator in the basement, a pay phone for employee use, in addition to the pay phone installed after 30 July 1986.
 
 
 29
 (2) Restore the method of scheduling kitchen employees to the method followed before January 1985.
 
 
 30
 (3) Restore to 7 minutes the grace period for tardiness.
 
 
 31
 (4) Return to the practice followed in the housekeeping department before 6 February 1985 with respect to making up time and with respect to the number of tardinesses and absences that would result in a writeup.
 
 
 32
 (5) Rescind the rules imposed about 19 June 1985 which require food servers to obtain a manager's permission before leaving the floor to use the restroom, establish specifications for washer productivity, forbid employees to drink beverages in the reservation office during working hours, require employees to sign in and out for breaks, limit to emergencies the receipt or placing of personal telephone calls, and require permission to leave the laundry to fetch a cup of coffee or to use the restrooms.
 
 
 33
 (6) Resume the payment to banquet bartenders of 9 percent of the receipts of cash bars.
 
 
 34
 (h) On request, bargain with Local 24 about the basis for paying the returning strikers for 13 June 1985, and reduce to writing and sign any agreement reached.
 
 
 35
 (i) Upon request by Local 24, give Local 24 as to each employee in the appropriate unit at the time such information is supplied, the name, address, telephone number, date of hire, job classification on date of hire, current job classification, current wage rate, seniority date as defined in Respondents' contract offer dated 20 January 1985, and type and name of health insurance coverage.
 
 
 36
 (j) Give Local 24, in dollars and cents, the information requested by Local 24 about 27 June 1985 as to three grievants' then rate of pay.
 
 
 37
 (k) Give Local 24 the information requested by Local 24 about 18 June 1985.
 
 
 38
 (l) Bargain with Local 24, on request, concerning all proposed changes in terms and conditions of employment of the employees in the appropriate unit.
 
 
 39
 (m) Make the following employees whole, in the manner prescribed in that part of the Administrative Law Judge's Decision denominated "The Remedy," for any losses they may have suffered by reason of the discrimination against them: E. Lucille Alred; Don Angelosanto; Lu Biggs; Kenneth Bomberski; Carol Bronson; Sabrina Byrd; Sharon Cupp; Donald Davison; Steve Hardee; Vickie Hardy; Stanley Hibner; Kathy Johnson; Rita Jurkiewicz; Sandra Krug; George Krzys; Cheryl Lipka; Doris Littleton; Carl McCarty; Judy McCarty; Douglas McDonald; Dorothy Meconi; Walter Motte; William Nagar; David Pardo; Ron Riccardi; Madeline Shebib; Phyllis Sturdivant; Debra Todd; Joseph Vacante; Vickey Vasha; Jean Vaughn; the banquet servers on and after 22 February 1985; the employees who on 21 May 1985 participated in the strike; the employees in the bar, banquet, and restaurant departments on and after 21 June 1985; and employees who attended the orientation sessions on 17 and 18 June 1985.
 
 
 40
 (n) Make the banquet bartenders whole in the manner prescribed in that part of the Administrative Law Judge's Decision denominated "The Remedy," for any losses they may have suffered by reason of the elimination of the payment to banquet bartenders of 9 percent of the receipts of cash bars.
 
 
 41
 (o) Preserve and, upon request, make available to the Board or its agents, for examination and copying, all payroll records, social security records, timecards, personnel records and reports, and all other records necessary or useful for analyzing and computing the amounts due under the terms of this Judgment.
 
 
 42
 (p) Post at its facilities in Troy, Michigan, copies of the attached notice marked "Appendix." Copies of said notice, on forms provided by the Regional Director for Region 7 of the National Labor Relations Board (Detroit, Michigan), after being duly signed by Respondents, shall be posted by them immediately upon receipt thereof, and be maintained by them for 60 consecutive days thereafter, in conspicuous places, including all places where notices to employees are customarily posted. Reasonable steps shall be taken by Respondents to insure that said notices are not altered, defaced or covered by any other material.
 
 
 43
 (q) Notify the aforesaid Regional Director, in writing, within 20 days from the date of this Judgment, what steps have been taken to comply therewith. For the purpose of determining or securing compliance with this Judgment, the Board, or any of its duly authorized representatives, may obtain discovery from the Respondents, their officers, agents, successors or assigns, or any other person having knowledge concerning any compliance matter, in the manner provided by the Federal Rules of Civil Procedure. Such discovery shall be conducted under the supervision of the United States Court of Appeals enforcing the Board's Order and may be had upon any manner reasonably related to compliance with the Board's Order, as enforced by the Court.
 
 APPENDIX
 NOTICE TO EMPLOYEES
 
 44
 POSTED PURSUANT TO A JUDGMENT OF THE UNITED STATES COURT OF
 
 
 45
 APPEALS ENFORCING AN ORDER OF THE NATIONAL LABOR
 
 RELATIONS BOARD
 An Agency of the United States Government
 
 46
 After a hearing at which all parties had an opportunity to present evidence and state their positions, the National Labor Relations Board has decided that we have violated the National Labor Relations Act, as amended, and has ordered us to post and abide by this notice.
 
 
 47
 WE WILL NOT tell you that pursuit of your remedies under the Act will be futile.
 
 
 48
 WE WILL NOT tell you that you will be terminated because of your union activity.
 
 
 49
 WE WILL NOT threaten you, because of your union activity, with discharge and prosecution.
 
 
 50
 WE WILL NOT photograph you while you are engaged in striking or picketing activity protected by the Act.
 
 
 51
 WE WILL NOT threaten you with arrest for striking or picketing protected by the Act.
 
 
 52
 WE WILL NOT tell you that we will not discuss union business with you or with union stewards.
 
 
 53
 WE WILL NOT tell non-employees, under circumstances where we reasonably know that such non-employees will convey such a message to you, that we will prosecute employees for fraud if they run for shop steward.
 
 
 54
 WE WILL NOT tell you that we have enough evidence to take other employees to court because they were not supposed to be writing grievances.
 
 
 55
 WE WILL NOT interrogate you, in a manner constituting interference, restraint, or coercion, about employees' action in writing employee grievances, or about union stewards' action in reporting seeming employee health hazards to government agencies.
 
 
 56
 WE WILL NOT tell you that orientation training required of certain employees had not been given to others because they were not union members.
 
 
 57
 WE WILL NOT tell you, after the end of a strike protected by the Act, that employees who were hired into bargaining-unit jobs during the strike are not union members and are not covered by an implemented contract proposal to Local No. 24, Hotel Employees and Restaurant Employees International Union, AFL-CIO.
 
 
 58
 WE WILL NOT discourage membership in Local 24, or any other union, by discharging, suspending, or disciplining your; changing your seniority date; changing the system for assigning work or work stations; changing your vacation pay; subjecting your work to very close scrutiny; summoning you for questioning about your unemployment compensation claims; keeping track of your breaks and lunches; deciding after the end of a strike protected by the Act to pay, and then paying, cash bonuses to employees because they worked during the strike; requiring former participants in such a strike to attend orientation sessions as a precondition for placement on the work schedules; failing or refusing to reinstate, or delaying the reinstatement of, participants in such a strike; according employees who worked during such a strike preferential seniority rights, affecting working assignments, with respect to participants in such a strike; physically accompanying you during working hours; delaying your reinstatement; removing telephones from our premises; diminishing employees' earning opportunities by increasing the employee complement; imposing new and more onerous work rules; or otherwise discriminating with regard to hire or tenure of employment or any term or condition of employment.
 
 
 59
 WE WILL NOT suspend you, physically accompany you during working hours, delay your reinstatement, discharge you, or otherwise discriminate against you because you have filed charges or given testimony under the Act.
 
 
 60
 As to employees in the unit represented by Local 24, WE WILL NOT change rates of pay, wages, hours of employment, or other conditions of employment without previously giving Local 24 notice of and an opportunity to bargain about such changes. The unit represented by Local 24 consists of all Banquet Housepersons/Banquets, Banquet Servers, Bar Porters, Bartenders/Banquets, Bartenders/Public, Bartenders/Service, Cashiers and Order Takers, Coatroom Attendants, Cocktail Servers, Door and Guest Service Attendants, Dryers, Food Servers, Food Service Attendants, Front Office, Room Clerks, Housekeeping Attendants, Housepersons, Lead Housekeepers, Line Cooks, Night Auditors, Pantry Persons, Pool Attendants, Prep Cooks, Pressers, Receiving Clerks, Reservations Clerks, Room Service Servers, Serving Room Attendants, Tailors, Telephone Operators, Utility Persons, Valet Parking Employees and Washers employed by us at Somerset Inn; but excluding office clerical employees, managerial employees, guards and supervisors as defined in the Act.
 
 
 61
 WE WILL NOT fail or refuse to give Local 24, on its request, relevant information needed for the proper performance of Local 24's duties as the bargaining representative of the employees in that unit.
 
 
 62
 WE WILL NOT in any other manner interfere with, restrain, or coerce employees in the exercise of their rights under the Act.
 
 
 63
 WE WILL offer Carol Bronson reinstatement to her former job or, if that job no longer exists, to a substantially similar job, with the seniority she enjoyed before 22 February 1985 and without prejudice to any other rights and privileges previously enjoyed.
 
 
 64
 WE WILL offer Kathy Johnson and Doris Littleton jobs as regular maids with the seniority date as such of 17 June 1985.
 
 
 65
 WE WILL afford to Vickie Hardy the seniority date of 17 June 1985 as a regular maid.
 
 
 66
 WE WILL restore to the banquet servers the seniority which they enjoyed as of 21 February 1985.
 
 
 67
 WE WILL return to the system used as of 21 February 1985 for assigning work to banquet servers.
 
 
 68
 WE WILL expunge from our files any reference to the unlawful disciplines issued to Sabrina Byrd; to the discipline issued to George Krzys on 17 June 1985; to the warning notices issued to Donald Davison (when he was an employee) dated 9, 10, 11, 12, and 13 February 1985; to his alleged termination in February 1985; to Carol Bronson's July 1985 resignation; and to any disciplines issued to any employee for any violations occurring as the result of any rules changes found unlawful. WE WILL expunge from the written records maintained by supervisor Donald Davison any and all references to Byrd and the number of loads washed by machines which she operated. WE WILL notify these employees in writing that this has been done and that evidence of such action will not be used as a basis for future personnel action against them.
 
 Upon request by Local 24, WE WILL:
 
 69
 1. Install, in front of the freight elevator in the basement, a pay phone for employee use, in addition to the pay phone installed after 30 July 1986.
 
 
 70
 2. Restore the method of scheduling kitchen employees to the method followed before January 1985.
 
 
 71
 3. Restore to 7 minutes the grace period for tardiness.
 
 
 72
 4. Return to the practice followed in the housekeeping department before 6 February 1985 with respect to making up time and with respect to the number of tardinesses and absences that would result in a writeup.
 
 
 73
 5. Rescind the rules imposed about 19 June 1985 which require food servers to obtain a manager's permission before leaving the floor to use the restroom, forbid employees to drink beverages in the reservation office during working hours, require employees to sign in and out for breaks, limit to emergencies the receipt or placing of personal telephone calls, and require notification of management before leaving the laundry to fetch a cup of coffee or use the restroom.
 
 
 74
 6. Resume the payment to banquet bartenders of 9 percent of the receipts of cash bars.
 
 
 75
 WE WILL, on request, bargain with Local 24 about the basis for paying the returning strikers for 13 June 1985.
 
 
 76
 WE WILL, on request, bargain with Local 24 concerning all proposed changes in terms and conditions of employment of the employees in Local 24's unit.
 
 
 77
 WE WILL, on request by Local 24, give it, as to each employee in Local 24's unit at the time such information is given, the name, address, telephone number, date of hire, job classification on date of hire, current job classification, current wage rate, seniority date as defined in our contract offer dated 20 January 1985, and type and name of health insurance coverage.
 
 
 78
 WE WILL give Local 24, in dollars and cents, the information requested by Local 24 about 27 June 1985 as to three grievants' then rate of pay.
 
 
 79
 WE WILL give Local 24 the information requested by Local 24 about 18 June 1985 related to the strikers' return and the orientation sessions on 17-18 June 1985.
 
 
 80
 WE WILL make the banquet servers on and after 22 February 1985; the employees who on 21 May 1985 participated in the strike; the employees in the bar, banquet, and restaurant departments on and after 21 June 1985; the employees who attended the orientation sessions on 17 and 18 June 1985; and the following employees whole, with interest, for any losses (including tips, gratuities, and service charges) they may have suffered by reason of the discrimination against them. Where this discrimination has affected employees' accumulation of hours for purposes of determining their "full-time" status and eligibility for various benefits, WE WILL afford them such status and eligibility and make them whole, with interest, for any losses they may have suffered by reason of their failure to receive such status and eligibility.
 
 
 81
 E. Lucille Alred Doris Littleton
Don Angelosanto Carl McCarty
Lu Biggs Judy McCarty
Kenneth Bomberski Douglas McDonald
Carol Bronson Dorothy Meconi
Sabrina Byrd Walter Motte
Sharon Cupp William Nagar
Donald Davison David Pardo
Steve Hardee Ron Riccardi
Vickie Hardy Madeline Shebib
Stanley Hibner Phyllis Sturdivant
Kathy Johnson Debra Todd
Rita Jurkiewicz Joseph Vacante
Sandra Krug Vickey Vasha
George Krzys Jean Vaughn
Cheryl Lipka
 
 
 82
 WE WILL make the banquet bartenders whole, with interest, for any losses they may have suffered by reason of the elimination of the payment to them of 9 percent of the receipts of cash bars.
 
 
 83
 SAMUEL FRANKEL, JEAN FRANKEL, STUART R. FRANKEL, STANLEY D. FRANKEL, BRUCE H. FRANKEL, AND JOELYN FRANKEL NYMAN, A CO-PARTNERSHIP, a/k/a YARMOUTH ENTERPRISES OF d/b/a SOMERSET INN
 
 
 84
 (Employer)
 
 Dated __________ By ____________________
 
 85
 (Representative) (Title)
 
 
 86
 This is an official notice and must not be defaced by anyone.
 
 
 87
 This notice must remain posted for 60 consecutive days from the date of posting and must not be altered, defaced, or covered by any other material. Any questions concerning this notice or compliance with its provisions may be directed to the Board's Office, Room 300, Patrick V. McNamara Federal Bldg., 477 Michigan Avenue, Detroit, Michigan 48226. Telephone Number (313) 226-3244
 
 
 
 *
 The Honorable John Feikens, U.S. Senior District Judge for the Eastern District of Michigan, sitting by designation